UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
)
BUZZFEED, INC.,                                      )
                                                              )
            Plaintiff,                                     )
                                                              )
            v.                                                )          Civil Action No. 19-1977 (EGS)
                                                              )
U.S. DEPARTMENT OF JUSTICE, *et al*.,   )
                                                              )
            Defendants.                              )
_____)

## OPPOSITION TO PLAINTIFF'S CROSS-MOTION
## FOR SUMMARY JUDGMENT AND REPLY IN SUPPORT
## OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

As Defendants the U.S. Department of Justice and the Federal Bureau of Investigation (collectively, "Defendants") explained in support of Defendants' Motion for Summary Judgment (ECF No. 26), Plaintiff Buzzfeed, Inc. ("Plaintiff") sued Defendants under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 *et seq*., seeking FBI records about the FBI's communications and contracts with genetic genealogy service companies that Plaintiff believes pertain to the science and practice of investigative technology. The FBI conducted an adequate search and properly withheld records under FOIA Exemptions 4, 6, 7(A), 7(C), 7(D), or 7(E), *see* 5 U.S.C. §§ 552 (b)(3), (b)(6), (b)(7)(A), (b)(7)(C), (b)(7)(D), (b)(7)(E).

Plaintiff clarifies in its Response[1] that it only challenges certain of the FBI's withholdings under Exemptions 4, 7(A), and 7(E) on the pages the FBI bates numbered 110 through 266.[2]

---

[1]        "Response" refers to Plaintiff's Cross-Motion for Summary Judgment (ECF No. 27) and Plaintiff's Opposition to Defendants' Motion for Summary Judgment (ECF No. 28).

[2]        "The FBI numbered all pages of its production consecutively as 'FBI(19-cv-1977)-1' through 'FBI(19-cv-1977)-369.'" Seidel Decl. (ECF No. 24-1) ¶ 48. Defendants only refer to the last three numbers of the bates labels for ease of reference.

Plaintiff, however, is incorrect that the FBI fails to describe the records withheld under Exemption 4 or satisfy FOIA's foreseeable harm requirement of the FBI's withholding under that exemption. The Declaration of Michael G. Seidel (the "Seidel Declaration") and the *Vaughn* index attached thereto as Exhibit K properly describe the records withheld and the basis for withholding that is further buttressed by the Second Declaration of Michael G. Seidel (the "Second Seidel Declaration") (ECF No. 26-4).

Moreover, Plaintiff's challenge to the FBI's withholding of information pertaining to what the FBI inadvertently classified as "previously closed cases" but in reality, are "cold cases" falls flat because those cases remain under investigations that continue to gather evidence for potential prosecution. Finally, the FBI properly withheld information pertaining to its strategy for utilizing particular evidence in investigations because that information is non-public and the release of the information could likely interfere with the FBI's investigations. Accordingly, the Court should grant Defendants' Motion for Summary Judgment and deny Plaintiff's Cross-Motion for Summary Judgment.

## ARGUMENT[3]

## I.    The FBI Properly Withheld Records Under Exemption 4.

"Exemption 4 shields from mandatory disclosure 'commercial or financial information obtained from a person and privileged or confidential.'" *Food Mktg. Inst. v. Argus Leader Media*, 139 S. Ct. 2356, 2362 (2019). Plaintiff incorrectly claims that the "FBI asserts Exemption 4 overall all the email chains failing within Bates No. 110-266," but does not "address those records in its description of its Exemption 4 withholdings." Pl.'s Resp. at 3. The FBI only withholds information

---

[3]    Defendants incorporate by reference the Background and Legal Standards sections from the Memorandum of Points and Authorities in Support of Defendants' Motion for Summary Judgment (ECF No. 26-1).

on the following bates numbered pages under Exemption 4, not all pages bates numbered 110-266: 110-111, 113, 115, 117, 119-127, 130-132, 135, 138, 140-141, 145-146, 148-150, 154, 157-160, 162-171, 179-180, 182-184, 186-188, 190-191, 193-201, 203-207, 209-213, 215, 217-218, 220-221, 226-229, 231-232, 234-236, 238-239, 241-242, 244, 246-248, 250-251, 253-255, 257, 259-260, 262-266. *See* Seidel Decl. Ex. K. On these pages, "[t]he proprietary forensic genealogy specifics withheld pursuant to FOIA Exemption 4 are so intertwined with the investigatory details of pending investigations withheld pursuant to FOIA Exemption 7(A) that both Exemptions were asserted in conjunction to protect these communications concerning ongoing investigations for which the FBI sought assistance." 2d Seidel Decl. ¶ 6.

Moreover, as explained in the Seidel Declaration and Second Seidel Declaration, the information withheld under Exemption 4 consists of "contractual and transactional documents and communications, including terms, conditions, privacy agreements, and procedural guidelines, and details relating to advancements for use of genetic genealogy services for law enforcement investigation purposes." Seidel Decl. ¶ 53; 2d Seidel Decl. 8. This is an adequate description of the withheld records sufficient to permit Plaintiff to test the FBI's claimed right to withhold information under Exemption 4. *See Bell v. Dep't of Def.*, Civ. A. No. 16-0959, 2018 U.S. Dist. LEXIS 166101, at *21 (D.D.C. Sept. 27, 2018) (quoting *Nat'l Treasury Emps. Union v. U.S. Customs Serv.*, 802 F.2d 525, 527 n.9 (D.C. Cir. 1986)) ("The purpose of a *Vaughn* index is 'to permit adequate adversary testing of the agency's claimed right to an exemption,' and thus must contain 'an adequate description of the records' and 'a plain statement of the exemptions relied upon to withhold each record.'").

Plaintiff maintains that the "FBI has failed to provide a foundation sufficient to show that genetic companies it communicated with have confidentiality policies in place that prohibit the

release of the specific information redacted." *See* Pl.'s Resp. at 3-4. However, Plaintiff has not established that the FBI must demonstrate that a company has confidentiality policies in place to withhold information under Exemption 4. Even assuming Plaintiff could make such a showing, the FBI has requested permission to submit for *in camera* review material from the contractor(s) that satisfy the personal knowledge requirement of Federal Rule of Civil Procedure ("Rule") 56. *See Leopold v. Dep't of Just.*, Civ. A. No. 19-3192, 2021 U.S. Dist. LEXIS 6236, at *15 (D.D.C. Jan. 13, 2021) ("declarations submitted . . . are appropriately considered on a motion for summary judgment in a FOIA case, as long as they satisfy the personal knowledge requirement of Rule 56"); Defendants' Motion for Leave to Submit Material for *Exparte*, *In Camera* Review (ECF No. 30).

Plaintiff's claim that the FBI fails to satisfy the foreseeable harm requirement set forth in 5 U.S.C. § 552(a)(8)(A)(i), Pl.'s Resp. at 4, fares no better. "Congress added the distinct foreseeable harm requirement to foreclose the withholding of material unless the agency can 'articulate both the nature of the harm [from release] and the link between the specified harm and specific information contained in the material withheld.'" *Reporters Comm. for Freedom of the Press v. FBI*, No. 20-5091, 2021 U.S. App. LEXIS 19762, at *32 (D.C. Cir. July 2, 2021) (quoting H.R. Rep. No. 391, at 9). "[A]gencies may . . . satisfy that burden on a category-by-category basis rather than a document-by-document basis—'that is, group together like records' and explain the harm that would result from release of each group[.]" *Id.* at 33. As explained in the Second Seidel Declaration, "[r]elease of the information would harm [the company(s)] competitively, harm the company(s) economic or business interests, and place them at a competitive disadvantage by competitors having access to confidential pricing and financial information." 2d Seidel Decl. ¶ 8. Thus, the FBI's withholdings under Exemption 4 are proper. *WP Co. LLC v. U.S. Small Business Admin.*, Civ. A. No., 2021 U.S. Dist. LEXIS 131604, at *29 (D.D.C. July 15, 2021) (finding that

foreseeable harm standard was met by statement that release of information would impact the company's sale of its product).

## II.    The FBI Properly Withheld Records Under Exemption 7(A).

"Exemption 7(A) allows agencies to withhold records which 'could reasonably be expected to interfere with law enforcement proceedings.'" *Sarno v. Dep't of Just.*, 278 F. Supp. 3d 112, 123 (D.D.C. 2017) (quoting 5 U.S.C. § 552(b)(7)(A)). Plaintiff claims that it "has elected to only challenge [the] FBI's application of Exemption 7(A) to 'previously closed investigations' in Bates No. 110-266[,]" and complains that the "FBI never suggests that an enforcement proceeding is actually pending or contemplated in the closed cases, as required for the exemption to apply." Pl.'s Resp. at 6.

Plaintiff misunderstands Exemption 7(A) and the basis for the FBI's withholding. "[A]n ongoing criminal investigation typically triggers Exemption 7(A): '[S]o long as the investigation continues to gather evidence for a possible future criminal case, and that case would be jeopardized by the premature release of that evidence, Exemption 7(A) applies.'" *Citizens for Responsibility & Ethics in Wash. v. Dep't of Just.*, 746 F.3d 1082, 1098 (quoting *Jaurez v. Dep't of Just.*, 518 F.3d 54, 59 (D.C. Cir. 2008)). The Second Seidel Declaration explains that the FBI inadvertently used the phrase "previously closed investigations" to refer to "cold case investigations" that could lead to future prosecution, and the release of information pertaining to those "cold case investigations" could jeopardize those investigations by permitting potential suspects to evade law enforcement efforts. 2d Seidel Decl. ¶¶ 14, 15. That is, "[t]he material in Bates numbered pages 110-226 discussing proprietary forensic genealogy advancements for use in law enforcement investigations concerned current, pending 'cold case investigations' where the FBI determined the forensic genealogy company(s) could provide additional leads to potentially resolve these cold case" that "will continue to be actively pursued until resolved." *Id.*¶ 14. Accordingly, Exemption 7(A)

precludes disclosure of the referenced information pertaining to an ongoing investigation. *Africa Fund v. Mosbacher*, Civ. A. No. 92-0289, 1993 U.S. Dist. LEXIS 7044, at *11 (D.D.C. May 26, 1993) ("Exemption 7A applies to 'investigatory records relating to law enforcement efforts which are still active or in prospect.'") (quoting *Title Guar. Co. v. NLRB*, 534 F.2d 484, 492 (2d Cir. 1976)) (other citation omitted).

## III.    The FBI Properly Withheld Records Under Exemption 7(E).

Finally, Exemption 7(E) permits the withholding of "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E); *Blackwell v. FBI*, 646 F.3d 37, 42 (D.C. Cir. 2011) (noting the "relatively low bar for the agency to justify withholding" information under Exemption 7(E)). Defendant explained that "[t]he FBI withheld three categories of information under Exemption 7(E): (i) records detailing law enforcement strategy utilizing particular evidence; (ii) internal FBI secure email and IP addresses, and intranet or web addresses; and (iii) sensitive file numbers." Defs.' Mem. (ECF No. 26-1) at 18.

Plaintiff states that it only "challenges [the] FBI's use of Exemption 7(E) as it applies to information identified by [the] FBI as 'strategy utilizing particular evidence[,]'" Pl.'s Resp. at 7, but its challenge is without merit. First, Plaintiff mistakenly claims that the "FBI fails to tie the strategies or evidence . . . to the specific context of Bates No. 110-266," *id.* at 8. As explained in the Seidel Declaration, this withheld category involves "sensitive, non-public strategies for using particular types of evidence gathered during unresolved and current pending murder, kidnapping, violent criminal gangs, and serial killing investigations." Seidel Decl. ¶ 90. "Revealing the utility

of these types of evidence would essentially instruct criminals on how best to maintain operational security and avoid providing the FBI critical evidence it can exploit to further its investigations; or allow criminals to defensively destroy or tamper with evidence that may become useful to the FBI in the future." *Id*. Revealing the information could also allow "criminals to predict the FBI's investigative responses upon its discovery of a particular piece of evidence," which "would enable criminals to preemptively modify their behavior to avoid detection and disrupt FBI investigators['] abilities to obtain valuable investigatory evidence." *Id*.

Second, Plaintiff is wrong that the FBI's withholdings of records detailing law enforcement strategy utilizing particular evidence under Exemption 7(E) are improper because "it is widely known that [the] FBI uses [Deoxyribonucleic Acid] [("]DNA["]) evidence collected from crime scenes to identify perpetrators and solve crimes, [and] it is also widely known that [the] FBI and other law enforcement agencies have interacted with and utilized companies with expertise in DNA testing and genetic genealogy to process evidence and solve cases." Pl.'s Resp. at 9. "In this Circuit, Exemption 7(E) can apply to even 'commonly known procedures' if disclosure would 'reduce or nullify their effectiveness.'" *Schneider v. Dep't of Just.*, Civ. A. No. 18-0474, 2019 U.S. Dist. LEXIS 167508, at *12 (D.D.C. Sept. 28, 2019) (quoting *Vazquez v. Dep't of Just.*, 887 F. Supp. 2d 114, 116 (D.D.C. 2012)). Knowledge of the withheld strategy utilizing particular evidence would reduce or nullify its effectiveness. Indeed, "[t]he FBI does not possess the forensic genetic genealogy capacities that are being provided by private genealogy companies[,]" 2d Seidel Decl. ¶ 17, which lead the FBI to turn "to genetic genealogy company(s) for assistance on using their own proprietary advancements to assist law enforcement," *id*. ¶ 18. "What is not known to the public are the specific proprietary forensic genealogy testing innovations, advancements, and specific details on forensic law enforcement capabilities that the private company(s) offer for law

enforcement purposes." *Id*. ¶ 17. That is the information that the FBI has withheld and described as strategy utilizing particular evidence. *See id*. ¶¶ 17-19. Thus, the FBI's withholdings under Exemption 7(E) are proper.

## CONCLUSION

For the foregoing reasons, the Department respectfully requests that this Court grant it summary judgment on Plaintiffs' claims and deny Plaintiff's cross-motion for summary judgment.

Dated: October 15, 2021
      Washington, DC

                                                Respectfully submitted,

                                                CHANNING D. PHILLIPS, D.C. Bar #415793
                                                Acting United States Attorney

                                                BRIAN P. HUDAK
                                                Acting Chief, Civil Division

By:          /s/ *Michael A. Tilghman II*
                                                  MICHAEL A. TILGHMAN II
                                                D.C. Bar #988441
                                                Assistant United States Attorney
                                                555 Fourth Street, NW
                                                Washington, DC 20530
                                                (202) 252-7113
                                                Michael.Tilghman@usdoj.gov

                                                *Attorneys for the United States of America*