**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

BUZZFEED INC.,

       Plaintiff,

v.

U.S. DEPARTMENT OF JUSTICE,

and

FEDERAL BUREAU OF
INVESTIGATION,

       Defendants.

Civ. Action No. 19-1977
(EGS)

**<u>MEMORANDUM OPINION</u>**

**I.    Introduction**

    Plaintiff BuzzFeed Inc. ("Plaintiff") filed this action
against the U.S. Department of Justice ("DOJ") and the Federal
Bureau of Investigation ("FBI") (collectively, "Defendants" or
the "agencies") under the Freedom of Information Act ("FOIA"), 5
U.S.C. § 552. *See generally* Compl., ECF No. 1.[1] Plaintiff seeks
agency records regarding communications between the Los Angeles
FBI field office and several DNA and genetic testing businesses.
*See id.* ¶ 1.

---

[1] When citing electronic filings throughout this Opinion, the
Court refers to the ECF header page numbers, not the page
numbers of the filed documents.

Upon careful consideration of Defendants' motion, the opposition and cross-motion by Plaintiff, the replies thereto, the applicable law, and the entire record herein, the Court hereby **GRANTS** Defendants' Motion for Summary Judgment, *see* ECF No. 26, and **DENIES** Plaintiff's Cross-Motion for Summary Judgment, *see* ECF No. 27.

## II.  Background

### A. Factual

On March 11, 2019, Plaintiff submitted a FOIA request to the FBI to obtain: (1) communications between the Los Angeles FBI field office and any employees of genetic genealogy service companies Family Tree DNA, Gene by Gene, MyHeritage, and Parabon Nanolabs (individually or collectively, "the company(s)"); (2) contracts or purchase orders between the Los Angeles FBI field office and Family Tree DNA, Gene by Gene, or Parabon NanoLabs; and (3) documents compiled by a member of the Los Angeles FBI field office and distributed to other law enforcement agencies regarding the available commercial services for genetic genealogy testing of crime scene samples and other services. *See* Pl.'s Counter-Statement of Disputed Facts ("SODF"), ECF No. 27-2 ¶ 2.

Defendants located 369 pages responsive to Plaintiff's request, released 43 pages in full, 60 pages in part, withheld five pages as duplicative, and withheld 261 pages in full.  *See*

2

Decl. Michael G. Seidel Ex. K—*Vaughn* Index ("Vaughn Index"), ECF No. 26-4 at 106-35. The agencies justify their withholdings under FOIA Exemptions 4, 6, 7(A), 7(C), 7(D), or 7(E). *See* SODF, ECF No. 27-2 ¶ 7.

### B. Procedural

On July 23, 2021, Defendants filed their Motion for Summary Judgment. *See* Defs.' Mot. Summ. J., ECF No. 26; Mem. P. & A. Supp. Defs.' Mot. Summ. J. ("Defs.' Mot."), ECF No. 26-1. In support of their motion, they attached a Declaration from Michael G. Seidel ("Mr. Seidel"), Section Chief of the Record/Information Dissemination Section of the FBI. *See* Ex. 1—Decl. Michael G. Seidel ("First Seidel Decl."), ECF No. 26-4. Plaintiff filed its opposition in combination with its Cross-Motion for Summary Judgment on August 24, 2021, *see* Pl.'s Combined Mem. Opp'n Defs.' Mot. Summ. J. & Supp. Pl.'s Cross-Mot. ("Pl.'s Opp'n"), ECF No. 27-1. On October 15, 2021, Defendants filed their combined Opposition to Plaintiff's Cross-Motion for Summary Judgment and Reply in Support of Defendants' Motion for Summary Judgment, *see* Opp'n Pl.'s Cross-Mot. Summ. J. & Reply in Supp. Defs.' Mot. Summ. J. ("Defs.' Reply"), ECF No. 31. They attached a new declaration from Mr. Seidel, *see* Second Decl. Michael G. Seidel ("Second Seidel Decl."), ECF No. 31-1.

Also on October 15, 2021, Defendants filed an unopposed Motion for Leave to Submit Material for *Ex Parte*, *In Camera*

Review. *See* Defs.' Mot. Leave Submit Material *Ex Parte*, *In Camera* Review ("Defs.' *In Camera* Mot."), ECF No. 30. Defendants identified the proposed additional material as information from the company(s) in support of Defendants' withholding of documents under FOIA Exemption 4. *Id.* at 1-2. The Court granted Defendants' Motion on October 19, 2021. Minute Order (Oct. 19, 2021). On October 27, 2021, Defendants notified the Court that they submitted their additional material for *ex parte*, *in camera* review. *See* Defs.' Notice *In Camera* Submission, ECF No. 33.

On November 5, 2021, Plaintiff submitted its Reply in Support of Its Motion for Summary Judgment. *See* Pl.'s Reply Supp. Mot. Summ. J. ("Pl.'s Reply"), ECF No. 34. The cross motions are now ripe and ready for adjudication.

## III. Legal Standard

### A. FOIA

FOIA's purpose is to "pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny." *Dep't of the Air Force v. Rose*, 425 U.S. 352, 361 (1976) (internal quotation marks omitted). Thus, FOIA favors "full agency disclosure unless information is exempted under clearly delineated statutory language." *Id.* at 360-61 (internal quotation marks omitted). An agency has the burden of demonstrating that "each document that falls within the class requested either has been produced, is unidentifiable, or is

4

wholly [or partially] exempt from the Act's inspection requirements." *Goland v. CIA*, 607 F.2d 339, 352 (D.C. Cir. 1978) (internal quotation marks omitted).

"[T]he vast majority of FOIA cases" are typically and appropriately decided on motions for summary judgment. *Brayton v. Off. of the U.S. Trade Representative*, 641 F.3d 521, 527 (D.C. Cir. 2011). Summary judgment is warranted "if the movant shows [by admissible evidence] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party opposing a summary judgment motion must show that a genuine factual issue exists by "(A) citing to particular parts of materials in the record . . . or (B) showing that the materials cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c). "[T]he inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks omitted).

In reviewing a summary judgment motion in the FOIA context, the court must conduct a *de novo* review of the record, *see* 5 U.S.C. § 552(a)(4)(B); but may rely on agency declarations, *see SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991). Agency affidavits or declarations that are "relatively

detailed and non-conclusory . . . are accorded a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents." *Id.* (internal quotation marks omitted). "The Court may grant summary judgment based solely on information provided in an agency's affidavits or declarations when they describe 'the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.'" *Sierra Club v. U.S. Fish & Wildlife Serv.*, 523 F. Supp. 3d 24, 31-32 (D.D.C. 2021) (quoting *Mil. Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981)).

**B. FOIA Exemptions**

Pursuant to FOIA's nine exemptions, an agency may withhold requested information, 5 U.S.C. § 552(b)(1)-(9); and the agency "bears the burden of proving the applicability of claimed exemptions," *ACLU v. U.S. Dep't of Def.*, 628 F.3d 612, 619 (D.C. Cir. 2011). To enable the Court to determine whether documents were properly withheld, the agency must provide a detailed description of the information in a 'Vaughn Index,' sufficiently detailed affidavits or declarations, or both. *See Jud. Watch, Inc. v. FDA*, 449 F.3d 141, 146 (D.C. Cir. 2006). Although there

6

is no set formula for a Vaughn Index, the agency must "disclos[e] as much information as possible without thwarting the exemption's purpose." *King v. DOJ*, 830 F.2d 210, 224 (D.C. Cir. 1987). "Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears logical or plausible." *Jud. Watch, Inc. v. U.S. Dep't of Def.*, 715 F.3d 937, 941 (D.C. Cir. 2013) (internal quotation marks omitted).

## IV. Analysis

Plaintiff limits its challenge to the agencies' assertion of Exemptions 4, 7(A), and 7(E) regarding certain documents withheld in full (Bates Nos. 110-266). Pl.'s Opp'n, ECF No. 27-1 at 5. Plaintiff has expressly asserted that it does not challenge the full or partial withholding of other documents identified as responsive by the agencies, the agencies' assertion of other Exemptions, and the adequacy of the agencies' search for records. *See id.*; SODF, ECF No. 27-2 ¶¶ 9, 40, 43, 55, 59, 64.

### A. Defendants' Search

Under FOIA, an agency must conduct a search that is "reasonably calculated to uncover all relevant documents." *Weisberg v. DOJ*, 705 F.2d 1344, 1351 (D.C. Cir. 1983). An agency has the burden to "show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information

requested." *Oglesby v. U.S. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990).

Mr. Seidel's First Declaration explains that the FBI searched its records systems, using key terms from Plaintiff's FOIA request to find responsive documents. First Seidel Decl., ECF No. 26-4 ¶¶ 29-30, 33. When that search turned up empty, the FBI conducted a targeted search of specialized offices and personnel that the FBI identified as most likely to have responsive records, including consulting its Federal DNA Database Unit, DNA Casework Unit, and National Acquisition Programs Unit. *Id.* ¶¶ 31-32, 34-46. Plaintiff does not challenge the adequacy of Defendants' search, SODF, ECF No. 27-2 ¶ 9, and the Court determines that this search was sufficient to meet Defendants' FOIA obligation.

### B. Challenged Documents (Bates Nos. 110-266)

Plaintiff only challenges the Defendants' withholding of documents with Bates Nos. 110-266. Pl.'s Opp'n, ECF No. 27-1 at 5. These documents are all described in the Vaughn Index as "[e]mail chain discussions concerning DNA forensic assistance for pending FBI investigations." *See* Vaughn Index, ECF No. 26-4 at 121-35. The agencies assert that the emails were "withheld under a combination of Exemptions 4, 6, 7(A), 7(C), or 7(E)." SODF, ECF No. 27-2 ¶ 67. Plaintiff challenges this assertion

only with respect to Exemptions 4, 7(A), and 7(E), *see* Pl.'s Opp'n, ECF No. 27-1 at 5; which the Court analyzes below.[2]

### 1. Exemption 4

FOIA Exemption 4 shields from disclosure "trade secrets and commercial or financial information obtained from a person [that is] privileged or confidential." 5 U.S.C. § 552(b)(4). Thus, to claim this Exemption for information other than trade secrets, the information must be "(1) commercial or financial, (2) obtained from a person, and (3) privileged or confidential." *Pub. Citizen Health Rsch. Grp. v. FDA*, 704 F.2d 1280, 1290 (D.C. Cir. 1983). Furthermore, the 2016 FOIA Improvement Act, Pub. L. No. 114-185, 130 Stat. 538, imposes an additional requirement for all exemptions that agencies "shall . . . withhold information . . . only if . . . the agency reasonably foresees that disclosure would harm an interest protected by an exemption" or if "disclosure is prohibited by law."  5 U.S.C. § 552(a)(8)(A)(i).

Plaintiff challenges Defendants' assertion of Exemption 4 on several grounds. First, it argues as a threshold matter that

---

[2] Since the Court concludes that the documents were properly withheld under Exemptions 4, 7(A), and 7(E), which together cover all of the pages with Bates Nos. 110-266, *see* Vaughn Index, ECF No. 26-4 at 121-29, the Court does not reach Defendants' withholdings under Exemptions 6 and 7(C) for the same pages. Plaintiff has not challenged Defendants' withholdings under Exemptions 6 and 7(C) for these pages. *See* Pl.'s Opp'n, ECF No. 27-1 at 5.

Defendants "failed to address the records [at issue] with any specificity," so the claim cannot be properly analyzed and thus fails. Pl.'s Opp'n, ECF No. 27-1 at 8. Second, it argues that Defendants have failed to prove that the records at issue are "confidential" within the meaning of the Exemption. *Id.* at 7-8. And finally, it argues that Defendants have failed to prove foreseeable harm as required by the FOIA Improvement Act. *Id.* at 4.

### a. Defendants Adequately Described the Documents

Plaintiff claims that Defendants do "not even state what information in these records specifically is exempt under Exemption 4." Pl.'s Opp'n, ECF No. 27-1 at 7. In general, the agencies' descriptions of the documents only need to contain "reasonably specific detail," *Mil. Audit Project*, 656 F.2d at 738; enough for a court to determine whether an exemption is properly invoked "without thwarting the exemption's purpose," *King*, 830 F.2d at 224. Since Plaintiff has elected not to challenge the application of Exemption 4 to any redaction of "pricing and financial information," Pl.'s Reply, ECF No. 34 at 6 n.2; and since confidentially is examined in the next section, the question is narrowed to whether the agencies have adequately described the documents to determine whether they are "commercial" and obtained "from a person."

Under Exemption 4, the term "commercial" takes on its "ordinary meaning," which is "pertain[ing] to the exchange of goods or services or the making of a profit." *Citizens for Resp. & Ethics in Wash. v. DOJ*, 58 F.4th 1255, 1263 (D.C. 2023). As the Court of Appeals for the District of Columbia Circuit ("D.C. Circuit") noted in a recent opinion, commercial information has been held to include a broad variety of information, including "a firm's data reports on its commercial service or its product's favorable or unfavorable attributes," "information an industry has gathered regarding its competitive strengths and weaknesses," and "'details of the operations of [utility companies'] nuclear power plants.'" *Id.* at 1265 (quoting *Critical Mass Energy Project v. Nuclear Regul. Comm'n*, 830 F.2d 278, 281 (D.C. Cir. 1987)). Although the Vaughn Index description of the documents is minimal, the declarations submitted in support of the agencies' Motion for Summary Judgment help to clarify what information is contained in the emails at issue and whether that information is "commercial."

In Mr. Seidel's First Declaration, he describes the documents as "confidential contractual and transactional documents and communications, including terms, conditions, privacy agreements, and procedural guidelines, and details relating to advancements for use of genetic genealogy services for law enforcement investigation purposes." First Seidel Decl.,

ECF No. 26-4 ¶ 53. He further details the information provided to the agencies as "specific pricing and financial information," which may "include reference to case specific services." *Id.* ¶ 54.

In Mr. Seidel's Second Declaration, he reiterates these claims and states that the "multiple unfolding email communications" contain "specific details on the forensic genetic genealogy assistance provided to the FBI," including "proprietary forensic applications, advancements, and testing statistics." Second Seidel Decl., ECF No. 31-1 ¶¶ 6, 9.

These descriptions, although general, contain "reasonably specific detail" to establish that the information described in the emails is commercial. They describe the forensic company(s) furnishing propriety information and details about their services for the purpose of obtaining contracts with the FBI. The commercial nature of these discussions is clear.

The descriptions are also detailed enough to establish that the information was provided "by a person." This requirement "restrict[s] the exemption's application to data which ha[s] not been generated within the Government." *Bd. of Trade of City of Chi. v. Commodity Futures Trading Comm'n*, 627 F.2d 392, 404 (D.C. Cir. 1980). As described above, the communications include case-specific details that the FBI provided to the genetic company(s) and propriety information about the company(s')

12

services, which were provided to the agencies in response. As Mr. Seidel explains in his Second Declaration, the agencies are not claiming Exemption 4 over every page of the email chains, but rather limit their assertion of this Exemption to pages that discuss "proprietary forensic genealogy specifics." Second Seidel Decl., ECF No. 31-1 ¶ 6 & n.2. Since the agencies are not claiming Exemption 4 protection over information that they provided in the email correspondence and the propriety data described in Mr. Seidel's Second Declaration was provided to the agencies by the genetic company(s') employee(s), Mr. Seidel's description of the emails is sufficient to determine that the information was supplied "by a person."

Accordingly, the Court disagrees with Plaintiff's argument that the agencies have not adequately described the documents to determine whether Exemption 4 may apply.

**b. The Documents Are Confidential**

The term "confidential" in Exemption 4 is given its "ordinary, contemporary, common meaning," which, is "private" or "secret." *Food Mktg. Inst. v. Argus Leader Media*, 139 S. Ct. 2356, 2362, 2363 (2019) (internal quotation marks omitted). Information is "confidential" under Exemption 4 "[a]t least where commercial or financial information is both customarily and actually treated as private by its owner and provided to the government under an assurance of privacy." *Id.* at 2366.

13

Plaintiff contests the first prong of this test, claiming that
Defendants have "failed to provide a foundation sufficient to
show that the genetic companies [the FBI] communicated with have
confidentiality policies in place that prohibit the release of
the specific information redacted in Bates 110-266." Pl.'s
Opp'n, ECF No. 27-1 at 7-8. The Court disagrees.

Mr. Seidel's First Declaration states that the genetic
company(s) asserted that the "information provided to the FBI
had not been made available to the public," "[c]ompany personnel
are prohibited under the company's confidentiality policy from
disclosing this type of information," and that the company(s')
"confidentiality and privacy policies do not allow
acknowledgement of working with any particular customer unless
the customer first publicly acknowledges the relationship."
First Seidel Decl., ECF 26-4 ¶ 54. In Mr. Seidel's Second
Declaration, he acknowledges that this information was provided
after the FBI "sent a submitter notice to the forensic genealogy
company(s) asking for their confidentiality policies" and that
as part of that notice, the FBI "provided the forensic genealogy
company(s) with proposed material for release, including the
email communications within Bates numbered pages 110-266."
Second Seidel Decl., ECF 31-1 ¶ 7. Both of these statements were
corroborated by the *ex parte*, *in camera* materials submitted by
Defendants, which emphasized from personal knowledge that the

14

documents at issue contain proprietary details about the company(s') capabilities, which are held in strict confidence within the company(s) and with their customers, both potential and actual. Defs.' Notice *In Camera* Submission, ECF No. 33 at 2.

Under the second prong of the test, the evidence establishes that the company(s) provided the information to the agencies under an assurance of privacy. In Mr. Seidel's First Declaration, he states that the "FBI submitted contractor solicitations under the condition that the contractor services requested would remain confidential even if the service contract is not accepted." First Seidel Decl., ECF No. 26-4 ¶ 55.

Accordingly, the Court concludes that the information contained in the contested documents is "confidential" within the meaning of Exemption 4 because it was both treated as private by the company(s) who furnished the information and provided to the agencies under the assurance of privacy by the FBI.

### c. Release of the Information Could Cause Foreseeable Harm to the Company(s)

To satisfy the foreseeable harm requirement, an agency "'must explain how disclosing, in whole or in part, the specific information withheld under Exemption 4 would harm an interest protected by this exemption, such as by causing genuine harm to [the submitter's] economic or business interests.'" *WP Co. v.*

15

*U.S. Small Bus. Admin.*, 575 F. Supp. 3d 114, 119 (D.D.C. 2021)
(quoting *Ctr. for Investigative Reporting v. U.S. Customs &
Border Prot.*, 436 F. Supp. 3d 90, 113 (D.D.C. 2019)). The
explanation itself must "articulate both the nature of the harm
[from release] and the link between the specified harm and
specific information contained in the material withheld." *Reps.
Comm. for Freedom of the Press v. FBI*, 3 F.4th 350, 369 (D.C.
Cir. 2021) (internal quotation marks omitted). Plaintiff argues
that the agencies "never specif[y] what harm would flow from the
release of information withheld under Exemption 4 in Bates No.
110-266." Pl.'s Opp'n, ECF No. 27-1 at 9. A review of the
declarations undermines this argument.

In Mr. Seidel's Second Declaration, he specifies that the
release of the information in the emails would "place [the
genetic company(s)] at a competitive disadvantage by competitors
having access to confidential pricing and financial
information." Second Seidel Decl., ECF No. 31-1 ¶ 8. The *in
camera*, *ex parte* materials confirm this concern and elaborate
that this harm is especially acute in the context of the
services provided because competitors are vying for contracts
with the same potential customers, so releasing information
about the company(s') pricing, existing customers, and propriety
genetic services will place the company(s) at a competitive
disadvantage. Defs.' Notice *In Camera* Submission, ECF No. 33 at

2. These claims link the release of the information contained in the emails—pricing, existing customer, and propriety services details—with the harm expected to occur—a competitive disadvantage in the market for genetic processing services.

Plaintiff next argues that the Defendants' articulated harms are too speculative. Specifically, it takes issue with Defendants' claims that release of information "'*could* put an investigation at risk'" or that information "'*may* include reference to case specific services.'" Pl.'s Opp'n, ECF No. 27-1 at 9 (quoting Defs.' Mot., ECF No. 26-1 at 9). However, these examples are beside the point. The declarations pointed to other information, including pricing data, existing customer information, and general propriety services, which both were included in the emails and can be reasonably foreseen to cause economic harm to the company(s) if disclosed. There is nothing overly speculative about the risks of harm to the company(s) if this information is disclosed. Accordingly, the Court rejects Plaintiff's argument that Defendants "failed to address the disputed records with the level of specificity the D.C. Circuit requires and has therefore failed to prove foreseeable harm." Pl.'s Opp'n, ECF. No. 27-1 at 9.

For all these reasons, the Court concludes that the agencies properly withheld the emails under FOIA Exemption 4.

### 2. Exemption 7(A)

Exemption 7(A) permits an agency to withhold records from disclosure if the records were "compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to interfere with enforcement proceedings." 5 U.S.C. § 552(b)(7)(A). "The principal purpose of Exemption 7(A) is to prevent disclosures which might prematurely reveal the government's cases in court, its evidence and strategies, or the nature, scope, direction, and focus of its investigations, and thereby enable suspects to establish defenses or fraudulent alibis or to destroy or alter evidence." *Maydak v. DOJ*, 218 F.3d 760, 762 (D.C. Cir. 2000). To successfully invoke the Exemption, the agency must show that "disclosure (1) could reasonably be expected to interfere with (2) enforcement proceedings that are (3) pending or reasonably anticipated." *Mapother v. DOJ*, 3 F.3d 1533, 1540 (D.C. Cir. 1993) (emphasis omitted). Plaintiff challenges Defendants' proof on each element but limits its challenge to information pertaining to "cold cases" identified by the FBI.[3] Pl.'s Reply, ECF No. 34 at 3.

---

[3] Plaintiff does not challenge the threshold requirement for Exemption 7, that the records at issue were "compiled for law enforcement purposes." SODF, ECF No. 27-2 ¶ 36. The Court confirms that the responsive records were compiled for law enforcement purposes because the FOIA request sought information about the FBI's interactions with forensic companies, which were

**a. The Emails Contain Information About Reasonably Anticipated Enforcement Proceedings**

An ongoing investigation that is likely to lead to future enforcement proceedings is enough to invoke the 7(A) Exemption. *See Ctr. for Nat. Sec. Stud. v. DOJ*, 331 F.3d 918, 926 (D.C. Cir. 2003). The D.C. Circuit has repeatedly explained that "[s]o long as the investigation continues to gather evidence for a possible future criminal case, and that case would be jeopardized by the premature release of that evidence, Exemption 7(A) applies." *Citizens for Resp. & Ethics in Wash. v. DOJ*, 746 F.3d 1082, 1098 (D.C. Cir. 2014) (internal quotation marks omitted).

In Mr. Seidel's First Declaration, he claims that the emails were related to "assistance requested for resolving previously closed investigations still requiring resolution (potential reopen), and for current, pending investigations." First Seidel Decl., ECF No. 26-4 ¶ 61. In his Second Declaration, Mr. Seidel clarifies that "the statement, 'previously closed investigations' was inadvertently used and should have stated 'cold case investigations.'"[4] Second Seidel

---

contacted by the FBI to potentially help resolve ongoing cases. *Id.* ¶¶ 2, 35; *see also Blackwell v. FBI*, 646 F.3d 37, 40 (D.C. Cir. 2011) (holding that "documents generated in the course of investigating . . . were quite obviously related to the FBI's law enforcement duties").

[4] Plaintiff does not suggest, and the Court finds no evidence in the record, that Mr. Seidel's change in characterization of the cases was made in bad faith.

Decl., ECF No. 31-1 ¶ 14. He further explains that these "cold
case investigations" are "current, pending" investigations that
will "continue to be actively pursued until resolved." *Id.*

Plaintiff argues that: (1) this distinction between
currently pending and "cold" cases "fail[s] to define [the cold
case] category of records in a manner that informs the Court's
analysis"; and (2) the distinction between "closed" and "cold"
cases is irrelevant because the agencies "make[] no mention of
whether law enforcement proceedings are reasonably likely in the
'cold' cases." Pl.'s Reply, ECF No. 34 at 4. The Court again
disagrees.

Mr. Seidel's Second Declaration explains that the cold
cases include "kidnapping, murder, violent gang criminal
enterprises, and serial killer investigations," which "will
continue to be actively pursued until resolved." Second Seidel
Decl., ECF No. 31-1 ¶ 14. He also specifies that "[t]he material
in [the emails] discussing propriety forensic genealogy
advancements for use in law enforcement investigations"
concerned these cold case investigations, "where the FBI
determined the forensic genealogy company(s) could provide
additional leads to potentially resolve these cold cases." *Id.*
Accordingly, not only have Defendants established that they
continue to "gather evidence for a possible future criminal
case" in these investigations, but also they show that the

information furnished to them by the company(s) has brought them closer to identifying suspects for prosecution. This description of the "cold cases" and how the emails relate to their progress is sufficient to inform the Court's analysis and establish that these investigations meet the latter two requirements for FOIA Exemption 7(A).

### b. Disclosure of the Emails Is Reasonably Likely to Interfere with Possible Future Criminal Cases

To properly claim a 7(A) Exemption, an agency must "demonstrate specifically how each document or category of documents, if disclosed, would interfere with the investigation, for example, how revelation of any particular record or record category identified as responsive to [a] request would reveal to particular targets, actual or potential, the scope, direction, or focus of the [investigation]." *Campbell v. Dep't of Health & Hum. Servs.*, 682 F.2d 256, 265 (D.C. Cir. 1982). Plaintiff is correct to point out that this standard requires reasonable specificity of both the information in the documents at issue and the investigations claiming to be impacted. Pl.'s Reply, ECF No. 34 at 5; *see Citizens for Resp. & Ethics in Wash. v. DOJ*, 746 F.3d at 1098 ("In the typical case, . . . the requested records related to a specific individual or entity that is the subject of the ongoing investigation, making the likelihood of interference readily apparent."); *Gray v. U.S. Army Crim.*

*Investigation Command*, 742 F. Supp. 2d 68, 75 (D.D.C. 2010) (holding that "conclusory, boilerplate statements [about interference], without reference to specific documents or even categories of documents, fail to support the agency's motion for summary judgment on the basis of Exemption 7(A)").

The declarations and Vaughn Index provide sufficient specificity to establish Exemption 7(A). First, in Mr. Seidel's First Declaration, he avers that the 7(A) Exemption in this case was invoked "in a limited fashion to protect specific details" pertaining to resolving cold cases, and that "release of this information would reveal . . . the existence of unknown investigations for which the FBI is seeking specialized services." First Seidel Decl., ECF No. 26-4 ¶ 61. Second, in the Vaughn Index for documents with Bates Nos. 110-266, several of the pages are indicated as additionally exempt under code "6/7C7." *See* Vaughn Index, ECF No. 26-4 at 121-29. Mr. Seidel's First Declaration explains that this code is used to indicate documents that contain the "names and other identifying information of individuals that were victims of heinous and violent crimes" in both pending and cold case investigations. First Seidel Decl., ECF No. 26-4 ¶ 75. This establishes that the emails at issue discuss details pertaining to specific cold case investigations.

Turning to the potential for interference, Mr. Seidel's First Declaration asserts that release of the information in the emails "would provide criminals with information about the government's investigation/enforcement strategies in ongoing matters, allow them to predict and potentially thwart these strategies, and/or allow them to discover/tamper with witnesses and/or destroy evidence." First Seidel Decl., ECF No. 26-4 ¶61. He further specifies that "[c]riminals who are potential suspects of these crimes could seek to avoid detention by changing their behaviors if they learn cold cases are being reinvestigated." *Id*. ¶ 75. Since the materials identify specific cold cases "for which the FBI is seeking specialized services," this inherently reveals to those perpetrators, "the scope, direction, [and] focus" of these investigations. Additionally, as noted in the previous section, the fact that the FBI believed "the forensic genealogy company(s) could provide additional leads to potentially resolve these cold cases," and the record shows that contracts were drawn up to retain the services of such company(s), *see* Vaughn Index, ECF No. 26-4 at 130-35; the emails provide a roadmap to the FBI's ongoing investigations in these identified cold cases. Thus, the potential for the type of interference identified by the FBI can be reasonably expected. *See Citizens for Resp. & Ethics in Wash.*, 746 F.3d at 1098 (D.C. Cir. 2014); *cf. Anand v. U.S. Dep't of Health & Hum. Servs.*, No.

21-1635, 2023 WL 2646815, at *16 (D.D.C. March 27, 2023)
(holding that "premature disclosure of: evidence, . . . the
direction of the government so far, government strategy, . . .
[and] the scope and limits of the government's investigation
. . . could reasonably be expected to interfere with the ongoing
criminal proceedings" (internal quotation marks omitted)).

Therefore, the Court concludes that the agencies properly
withheld the emails under Exemption 7(A)

### 3. Exemption 7(E)

FOIA Exemption 7(E) permits the withholding of information
collected for law enforcement purposes if release of that
information would "disclose techniques and procedures for law
enforcement investigations or prosecutions . . . if such
disclosure could reasonably be expected to risk circumvention of
the law." 5 U.S.C. § 552(b)(7)(E). The purpose of the Exemption
is to prevent publication of information that would "train
potential violators to evade the law or instruct them how to
break the law," and to protect information that, if disclosed,
"increase[s] the risks that a law will be violated or that past
violators will escape legal consequences." *Mayer Brown LLP v.
IRS*, 562 F.3d 1190, 1193 (D.C. Cir. 2009) (emphases omitted).
The Exemption sets a "relatively low bar" for an agency to
justify withholding information, but the government must
"'demonstrate logically how the release of the requested

information might create a risk of circumvention of the law.'" *Blackwell*, 646 F.3d at 42 (quoting *Mayer Brown LLP*, 562 F.3d at 1194).

Plaintiff challenges Defendants' use of Exemption 7(E) with regard to the category "strategy utilizing particular evidence." Pl.'s Reply, ECF No. 34 at 6. First, it claims that Defendants' declarations are "too generic to support its withholdings" and fail to "fully explain what information falls into this category." *Id.* It cites paragraph 19 of Mr. Seidel's Second Declaration and argues that Defendants "impl[y] that the category refers to the genealogy companies' DNA analysis services, but it is unclear whether the category is limited to this information or whether [it] applies to other evidence-gathering techniques or to evidence beyond DNA." *Id.* In the two paragraphs above the one Plaintiff cites, Mr. Seidel explains that the information at issue is "specific propriety forensic genealogy testing innovations, advancements, and specific details on forensic law enforcement capacities that the private company(s) offer" as well as "investigation details," including "details on evidence collection and the evidence gathered for pending investigations." Second Seidel Decl., ECF No. 31-1 ¶¶ 17-18. This information does more than "imply" that the information in the category at issue refers to the company(s') capabilities. It also explains that the information contains

details about law enforcement's evidence collection in specific cases. This explanation is detailed enough to determine what is included in the category "strategy utilizing particular evidence." Additionally, it is irrelevant whether the category also includes "other evidence-gathering techniques or to evidence beyond DNA" because all "techniques and procedures for law enforcement investigations or prosecutions" are covered by the Exemption if they "could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E).

Plaintiff's second challenge to Defendants' use of 7(E) for the category "strategy utilizing particular evidence" is that the Exemption "does not protect law enforcement techniques and procedures that are well known to the public." Pl.'s Opp'n, ECF No. 27-1 at 12. While this is correct, Mr. Seidel's Second Declaration emphasizes that the information contained in the emails goes beyond the public's general knowledge about DNA evidence and the FBI's use of such evidence. *See* Second Seidel Decl., ECF No. 31-1 ¶ 17. Specifically, he highlights that the information provided by the company(s) details the "innovations" and "advancements" in this field. *Id.* Additionally, while the public may know generally that the FBI collects and analyzes DNA, it does not follow that the public is aware of the specific "*details* on evidence collection and the evidence gathered for pending investigations." *Id*. ¶ 18 (emphasis added).

Turning to whether the release of this category of information could lead to circumvention of the law, the Court is persuaded that such a risk exists. In Mr. Seidel's Second Declaration, he notes that revealing particular details for pending investigations "would reveal the scope of the investigation and tip off potential targets." *Id.* He also notes that the information about the genealogy company(s') capabilities "would provide criminals with information concerning the FBI's investigation and enforcement strategies in ongoing matters, allowing them to predict and potentially thwart these strategies[] . . . or destroy evidence." *Id.* The connection between revealing details of an ongoing investigation and jeopardizing that investigation were explained in the section discussing Exemption 7(A) and remain true here. Additionally, the Court agrees that there is a logical connection between releasing details about the advancements in forensic evidence processing available to the FBI and fear that the details of such advancements could lead future suspects to potentially "thwart" those strategies.

Finally, although not challenged by Plaintiff, Defendants also invoke Exemption 7(E) over the category of information containing "internal FBI secure email and IP addresses, and

internet/web addresses."[5] First Seidel Decl., ECF No. 26-4 ¶ 91.
They claim that release of such information could allow
criminals to "gain unauthorized access to, view and manipulate
data on, or otherwise interfere with the FBI's non-public
intranet systems and view or manipulate sensitive investigative
data, interfere with the FBI's non-public internet protocol, or
hinder the FBI's ability to enforce the law by disrupting the
FBI's internal communications." *Id.* This type of information has
typically been held to be exempt under Exemption 7(E). *See,
e.g.*, *Ford v. DOJ*, 208 F. Supp. 3d 237, 252-53 (D.D.C. 2016)
(holding exempt "internal security phone number, internal email
address and/or non-public intranet web address"); *Tracy v. DOJ*,
191 F. Supp. 3d 83, 96 (D.D.C. 2016) (holding exempt "the
address of an internal FBI website"). The Court concludes there
is no reason in the record here to deviate from that norm.

Accordingly, the Court concludes that the emails were
properly withheld under FOIA Exemption 7(E).

### C. Other Documents

Of the 369 pages the agencies identified as responsive,
Defendants released 43 pages in full, withheld five pages as

---

[5] The holding and analysis in this paragraph applies to all
documents withheld in part under this category, including Bates
Nos. 1-2, 4-5, 7, 13, 36, 77, 79-80, 82-86, 90, 92, 103, and
109.

duplicative, withheld 60 pages in part, and withheld 261 pages
in full under FOIA Exemptions 4, 6, 7(A), 7(C), 7(D), or 7(E).
SODF, ECF No. 28-1 ¶ 7. In the previous section, the Court
determined that Defendants properly withheld 157 of those pages
(Bates Nos. 110-266) in full under Exemptions 4, 7(A), and 7(E).
The Court now briefly turns to the remaining 164 pages that were
withheld either in full or in part.

### 1. Information Properly Withheld Under Exemptions 4 and 7(E)

Many of the remaining documents were properly withheld in
full or in part under Exemption 4. 114 documents in the Vaughn
Index have descriptions that indicate the information withheld
involves "pricing," "terms of service," or "contractual
specifications" for the company(s') services.[6] These
descriptions, alongside the *in camera*, *ex parte* materials
describing confidentiality, and the foreseeable harm analysis
conducted in the Exemption 4 section above, suffice to establish

---

[6] Vaughn Index, ECF No. 26-4, at 1, 3, 10-12, 22-27 (Bates Nos.
1, 4, 6, 21-27, 79, 82, 84, 87-88, 102, 267-341, 347-69).
Documents with Bates Nos. 269-99, 301-12, 315-25, 327, 336-41,
347-58, 360-61, and 363 are also claimed withheld under
Exemption 7(D). Because the Court concludes that these documents
were properly withheld in full under Exemption 4, the Court does
not reach Defendants' withholdings under Exemption 7(D).
Plaintiff has not challenged Defendants' withholdings under
Exemption 7(D). *See generally* Pl.'s Opp'n, ECF No. 27-1.

that these 114 documents were properly withheld either in full or in part under Exemption 4.[7]

Several documents were claimed exempt in part under Exemption 4, 7(E), or a combination of the two. These documents, Bates Nos. 17, 28, 36, 38-40, 42, 44-45, 57, 64-65, 75, and 77, are all emails between FBI personnel and the genetic company(s). Vaughn Index, ECF No. 26-4 at 3-9. According to the Vaughn Index, they discuss various events, articles on genetics, and material for press releases. *Id*. As noted above, Mr. Seidel explained that the information withheld under Exemption 4 included "confidential contractual and transactional documents and communications, including terms, conditions, privacy agreements, and procedural guidelines, and details relating to advancements for use of genetic genealogy services for law enforcement investigation purposes." First Seidel Decl., ECF No. 26-4 ¶ 53. Where this information was included in these email communications, those details were properly redacted under Exemption 4. Additionally, Mr. Seidel explained that information withheld under Exemption 7(E) for strategies for utilization of particular evidence included "sensitive, non-public strategies for using particular types of evidence gathered during

---

[7] Since five pages (Bates Nos. 342-46) were duplicates of pages properly withheld under Exemption 4, the agencies also properly withheld these duplicates.

unresolved and current pending murder, kidnapping, violent criminal gangs, and serial killing investigations." *Id.* ¶ 90. Where this information was included in the email communications, those details were also properly redacted under Exemption 7(E).

**2. Information Properly Withheld Under Exemption 7(C)**

Exemption 7(C) allows withholding of "records or information compiled for law enforcement purposes" when such information "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). "In deciding whether the release of particular information constitutes an unwarranted invasion of privacy under Exemption 7(C), [the Court] must balance the public interest in disclosure against the [privacy] interest Congress intended the Exemption to protect." *ACLU v. DOJ*, 655 F.3d 1, 6 (D.C. Cir. 2011) (internal quotation marks omitted). When balancing the private interest against the public interest in disclosure, "the only public interest relevant for purposes of Exemption 7(C) is one that focuses on the citizens' right to be informed about what their government is up to." *Davis v. DOJ*, 968 F.2d 1276, 1282 (D.C. Cir. 1992) (internal quotation marks omitted).

Defendants invoke FOIA Exemptions 6 and 7(C)[8] to withhold "names and other identifying information" for 8 categories of

---

[8] In this case, because all of the responsive records were compiled for law enforcement purposes, *see supra* note 3, and the

people: (1) commercial institution personnel; (2) third parties who provided information to the FBI; (3) third parties merely mentioned; (4) FBI Special Agents and Professional Staff; (5) local and state law enforcement personnel; (6) non-FBI federal government personnel; (7) third-party victims; and (8) third parties of investigative interest. First Seidel Decl., ECF No. 26-4 ¶ 51. Names and identifying information of private individuals, law enforcement officers, and other employees connected with law enforcement personnel are routinely protected under Exemption 7(C). *See Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1115 (D.C. Cir. 2007); *Passmore v. DOJ*, 245 F. Supp. 3d 191, 204 (D.D.C. 2017) (citing cases). The Court agrees that in this case the privacy interests of the third parties, law enforcement personnel, and other related staff trigger the 7(C) Exemption for that information.

### D. Segregability

Under FOIA, "even if [the] agency establishes an exemption, it must nonetheless disclose all reasonably segregable, nonexempt portions of the requested record(s)." *Roth v. DOJ*, 642 F.3d 1161, 1167 (D.C. Cir. 2011) (internal quotation marks omitted). "It has long been a rule in this Circuit that non-

---

information was properly withheld under Exemption 7(C), the Court need not consider whether Exemption 6 applies to the same information.

exempt portions of a document must be disclosed unless they are inextricably intertwined with exempt portions." *Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977). The Court has an independent obligation to assess segregability even if not contested by the requester. *See Sussman*, 494 F.3d at 1116. However, "[a]gencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material," which must be overcome by some "quantum of evidence" from the requester. *Id.* at 1117.

Defendants claim, and the Court has independently confirmed above, that all the documents were properly withheld in full or in part under a combination of at least Exemptions 4, 7(A), 7(C), and 7(E). In Mr. Seidel's First Declaration, he states that the FBI conducted a segregability review of the records and determined that: (1) for the pages released in part, they "compromise a mix of material that could be released and material that needed to be withheld as release would trigger foreseeable harm to one or more interests protected by the cited FOIA exemptions on these pages"; and (2) for the pages withheld in full, there was "no information that could be reasonably segregated for release without triggering foreseeable harm to one or more of the cited FOIA exemptions." First Seidel Decl., ECF No. 26-4 ¶ 96. These representations, in addition to the Court's determination that the information has been properly

33

withheld under several exemptions, are sufficient to trigger the presumption that the agencies satisfied their FOIA obligations with respect to segregability.

**V.   Conclusion**

For the foregoing reasons, the Court **GRANTS** Defendants' Motion for Summary Judgment, *see* ECF No. 26, and **DENIES** Plaintiff's Cross-Motion for Summary Judgment, *see* ECF No. 27.

An appropriate Order accompanies this Memorandum Opinion.

**SO ORDERED.**

Signed:   **Emmet G. Sullivan**
          **United States District Judge**
          **October 17, 2023**